STATE EX REL. CHARLES D. MATTESON v. ALFRED W. LUECKE AND ANOTHER.[1]

April 5, 1935.

No. 29,799.

[1]Reported in 260 N. W. 206.

*Charles Foster,* for appellant.
*Thomas H. Quinn,* for respondents.

DEVANEY, CHIEF JUSTICE.

Proceedings instituted by the county of Rice against relator herein to enforce payment of taxes for the years 1929, 1930, and 1931 on certain property in the city of Faribault, Minnesota. L. 1933, c. 414, § 1, 3 Mason Minn. St. 1934 Supp. § 2139½, provides:

"In the event that the taxes of 1926 and all prior years against any parcel of land have been paid, or sold or assigned to a purchaser other than the state, but the taxes for 1927 or 1928, or any part thereof remain delinquent and held by the state, the county

auditor and treasurer are authorized and directed to accept in full payment and discharge of all taxes and assessments and interest and penalties thereon, or for an assignment thereof, an amount equal to three-fifths of such taxes and assessments as originally assessed and taxed, without penalty or interest. In the event that the taxes for 1928 and all prior years against any parcel of land have been paid, or sold or assigned to a purchaser other than the state, but the taxes for 1929 or 1930 or any part thereof remain delinquent and held by the state, the county auditor and treasurer are authorized and directed to accept in full payment and discharge of all taxes and assessments and interest and penalties thereon, or for an assignment thereof, an amount equal to four-fifths of such taxes and assessments, as originally assessed and taxed."

August 29, 1933, relator duly tendered payment of the taxes for the years 1929, 1930, 1931, and 1932, deducting a fraction from the amount originally assessed in accordance with the discount provision of this statute. This tender was refused by A. W. Luecke, county auditor of Rice county. Thereupon relator petitioned the district court and obtained an alternative writ of *mandamus* directing said A. W. Luecke to accept the offered payment in full satisfaction of the taxes for those years. Answer to the writ was duly interposed, and upon trial the district court made an order discharging the writ and denying the peremptory writ. From this order relator appeals.

The case squarely puts in issue the constitutionality of L. 1933, c. 414, § 1, by which it is provided that under certain circumstances delinquent taxes may be satisfied in full by the payment of a fraction of the amount originally assessed. This is the only question in the case.

The discussion divides itself into two parts:

(1) Is this a statute allowing a discount or remission to a delinquent taxpayer, or is it merely a statute permitting the state to sell forfeited land or to satisfy at a discount and on public sale a claim represented by a judgment which it holds for delinquent taxes against any certain property?

(2.) If this is a statute allowing a discount or remission to a delinquent taxpayer, does it violate the uniformity clause of Minn. Const. art. 9, § 1?

■ It is patent at the outset that the section of the statute here under consideration differs radically from all previously enacted statutes of this general character with the exception of L. 1931, c. 129, § 2. Our attention has been called to the following statutes: L. 1893, c. 150; L. 1899, c. 322; L. 1907, c. 430; L. 1911, c. 30; L. 1913, c. 333; L. 1917, c. 303; L. 1919, c. 337; L. 1921, c. 386; L. 1925, c. 208; L. 1927, c. 119; L. 1929, c. 415. All of these enactments are concerned with delinquent tax sales and with the disposition of property held by the state. They deal with the state's disposal of property which has been forfeited to it or against which it holds a judgment. When the state secures a judgment for delinquent taxes, it holds a claim against such realty, which claim is property of the state in the same sense as the buildings and personalty used and operated by the various departments of the state government are also the property of the state. So, just as the state can sell its buildings or other property, this claim may be disposed of by the state in such manner as the legislative branch of the state government may deem fit. The state may keep it, or, if it so chooses, it may satisfy such claim at a public sale for a fraction of the amount represented thereby. The same applies to sale of property forfeited to the state. True, when a tax delinquency sale is had, the owner is allowed to bid the property in himself under certain circumstances. Further, if he does not bid it in, he is allowed to redeem from whomsoever purchases. Thus he receives a remission. But, he is assuming the risk that at such public sale someone will bid the property in for more than the amount of the claim. Nowhere in any of these statutes (except the 1931 and 1933 enactments) is the owner or anyone else given a prior right to come in and to satisfy the claim for delinquent taxes by paying a fraction of the amount represented thereby. All must stand alike at a public sale. That statutes such as these tax sale statutes are valid no one can doubt. By virtue of these the state is allowed to realize upon and to satisfy a legitimate obligation owing to it. But

it is clear beyond need for further elucidation that the provision of the statute in the case at bar is quite different from those above discussed, for the statute in the case at bar permits an owner to pay merely a fraction of his delinquent taxes and to secure thereby a full satisfaction without there being held a public sale or without any further procedure. While it is true that in an individual case the result may be the same whether the delinquent owner pays a fraction of the, originally assessed taxes directly or whether an annual tax judgment sale is had and he bids the property in for the same fraction, yet the result is not necessarily always the same. The very cogent possibility that the result might well be otherwise controls and serves as a basis for distinguishing the two types. The theory underlying the two types of statutes is different and easy of distinction, and the fact that the result may be the same in a particular case is not of importance.

■ Having decided that this statute, L. 1933, c. 414, § 1, is a statute allowing a remission or discount to a delinquent taxpayer, the next consideration is whether such statute violates Minn. Const. art. 9, § 1, which provides in part:

"Taxes shall be uniform upon the same class of subjects * * *."

It is well settled that the legislature may make such classes of taxable subjects as it chooses and that the same will not be disregarded by this court unless clearly unreasonable, fanciful, or arbitrary. Raymond v. Holm, 165 Minn. 215, 218, 206 N. W. 166; State ex rel. Youngquist v. Common Sch. Dist. No. 78, 180 Minn. 44, 47, 230 N. W. 115; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102.

"A classification must be reasonable, and such as is suggested by essential differences of nature, situation, or circumstances, or by characteristics which make it desirable on grounds of public policy to apply to the members of the class a particular method of taxation, and impracticable to apply thereto the ordinary methods of taxation." Mutual Benefit L. Ins. Co. v. Martin, 104 Minn. 179, 181-182, 116 N. W. 572, 573.

It is clear to us that the statute being considered (and the similar provision of L. 1931, c. 129, § 2) is violative of this provision of

our constitution. The classification of subjects here attempted is unreasonable and fanciful. Realty owners are divided into two classes, those who pay taxes promptly and those who do not. The latter pay a smaller amount than the former. No reasonable basis founded on essential differences of nature or circumstances suggests itself for this classification. In determining the reasonableness of a classification set up by the legislature, the court will not concern itself with the question of public policy involved and the expediency of the measure. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102. Yet, in determining the reasonableness of a classification, a legitimate object for the court's consideration is the practical effect the classification is bound to have on business and organized society generally. In this connection it readily can be seen that the statute here concerned encourages and fosters tax delinquencies in the state. Taxpayers are prompted to allow taxes to become delinquent in order thereafter to be able to satisfy them in full by the payment of a fraction of the amount originally assessed. Such result is not desirable and demonstrates the unreasonableness of the classification. While several courts have determined that statutes remitting interest and penalties on delinquent taxes before the period of redemption has passed are constitutional, State ex rel. Pierce v. Coos County, 115 Or. 300, 237 P. 678; Jones v. Williams, 121 Tex. 94, 45 S. W. (2d) 130, 79 A. L. R. 983; State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S. W. (2d) 750; *contra,* Sanderson v. Bateman, 78 Mont. 235, 253 P. 1100, such cases are based on the grounds that the interest is not payment for the use of money but rather a penalty and that, since a penalty is not part of the tax, the uniformity requirement did not apply to remissions thereof.

Of note here is the case of LeDuc v. City of Hastings, 39 Minn. 110, 38 N. W. 803, where the court held unconstitutional a statute which required the issuance of an order upon the treasurer for the amount of taxes assessed on the land of those who had been in the service of the United States and honorably discharged. The court was there of the opinion that the legislature had no power to relieve property by releasing or refunding taxes after such have been levied.

A very interesting and recent comment on the statute here under consideration is to be found in 18 Minn. L. Rev. 849, 859, where it is said:

"To the extent that the Minnesota statutes allow a remission of taxes and charges constituting a lien on land by allowing the owner of the land to redeem from the purchaser at a forfeiture sale by payment of the sum paid at the forfeiture sale plus interest, the statutory provisions seem to be constitutional. But the constitutionality of the laws permitting reductions of taxes before the period of redemption has expired is more doubtful because they in effect give exemptions to delinquent taxpayers which are not granted to those who pay their taxes promptly. Insofar as those statutes allow remissions of penalties and interest, however, most of the authorities that have considered the problem hold them valid. Although the principal statute allowing reduction of taxes before the period of redemption has expired, Minnesota Laws 1933, ch. 414, sec. 1, is a temporary enactment, applying only to payments made before December 31, 1934, it is difficult to sustain its validity on the ground that it is an emergency measure. Certainly, it is questionable whether statutes of this type do not tend to put a premium on tax delinquency rather than to encourage tax payment."

We are not here called upon to decide whether the state has any lien for taxes after giving its receipt in full under the statute herein discussed. The legislature may, if it so desires, clarify the question by declaring such payments, sales, or assignments of the said taxes to constitute payment in full and thus relieve property in this state of any possible cloud on title.

We hold here that L. 1931, c. 129, and L. 1933, c. 414, are invalid only insofar as they provide that taxes which are current or merely delinquent may be satisfied in full by the payment of a fraction of the amount originally assessed. We think the various sections of the two chapters are severable and that the reasoning which leads to the conclusion that part thereof is invalid does not apply to nor invalidate the other parts thereof on the same ground.

Though apparently there is but little judicial authority on the precise question, we perceive that a law permitting a delinquent taxpayer to pay a portion of delinquent taxes in full satisfaction thereof might be valid under certain circumstances. If, for instance, the amount to be paid in full satisfaction of delinquent taxes was made to depend upon the value of the property, an investigation of the owner's ability to pay, and perhaps other considerations, such a law might be sustained despite the fact that the period of redemption had not expired. There would then be no unreasonable classification, and the evil of the case at bar would be avoided. There would and could be no voluntary delinquencies. The taxing authorities under such a law as is suggested should endeavor to collect by all legal and proper means the amounts due in full; but, having exhausted such means, it follows that such officials would not be forbidden to collect any amount whatsoever simply because they could not collect all, as long as delinquencies are not deliberately and effectively fostered and encouraged.

Affirmed.

Loring, Justice (concurring).

I concur in the result.

Julius J. Olson, Justice (dissenting).

*Mandamus* at the instance of petitioner to compel the county auditor and treasurer of Rice county to accept payment of certain taxes levied upon property owned by him in the city of Faribault at a discount rate and as authorized by L. 1933, c. 414, § 1. Being unsuccessful in the court below, the matter has been brought here for review. The majority opinion sustains the trial court upon the theory that, as a matter of law, there is a classification here made which is unreasonable and arbitrary and as such is contrary to art. 9, § 1, of the constitution, which requires taxes to be uniform upon the same class of subjects. As stated in the majority opinion, that is the only question before us.

This court recently in Reed v. Bjornson, 191 Minn. 254, 257, 253 N. W. 102, 104, commented upon this phase of the constitution, and the following excerpts therefrom are deemed important here:

"We approach the solution of the questions presented under the guidance of certain elementary and fundamental rules, among which is that which invokes every presumption in favor of the constitutionality of an act of the legislature,. and that the court should not declare such an act unconstitutional except when satisfied after the most careful consideration that it conflicts with some provision of the state or federal constitution. State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728. On the other hand, we may not stretch the constitution to suit the convenience of the hour.

"It is elementary that the power of taxation is inherent in sovereignty and that under our system of government it reposes in the legislature, except as it is limited by the state or the national constitution. In other words, the constitutional provisions are not a grant of, but a limitation upon, this power, and except insofar as thus limited it is exhaustive and embraces every conceivable subject of taxation."

With these principles of law before us, it may be of value to note what the tax situation in Minnesota was at the time the law here under review was under consideration by the legislature. What brought about the enactment of this particular statute?

Taxation always has been, is. now, and probably always will be a matter of grave concern to all people, rich and poor alike. The tax dollar is hard to part with for all of us. Taxation takes with a heavy hand and places burdens upon thrift, economy, and savings. It reaches those who have property as well as those who have not, in some form, directly or indirectly. The subject is one of daily conversation and almost universal condemnation. No citizen is satisfied with present conditions. Those who seek public office talk about taxes and tax relief as the vital and supreme question.

Tax delinquencies in Minnesota have reached enormous proportions. The situation confronting the legislature was undoubtedly considered by it to be, as it was, of very grave concern to the state and its inhabitants. Compilations made by the Minnesota tax commission indicate certain very important facts. Out of taxes upon real estate, levied to be collected in 1932, 20.18 per cent, or

$23,355,808, was uncollected. The percentage in the various counties varies greatly. The smallest percentage of delinquency for that year was in Steele county, where the delinquency was only 5.45 per cent; the next lowest Carver county, where the delinquency was only 5.91 per cent; and the next Winona county, where the delinquency was 5.93 per cent. These are the exceptions. In many counties the tax delinquency ran from 20 per cent up to 78.46 per cent in Lake of the Woods county. Such counties as Aitkin with 69.98 per cent; Beltrami, 66.37 per cent; Cass, 65.4 per cent; Koochiching, 55.12 per cent; Clearwater, 54.41 per cent; Roseau, 54.22 per cent; Mahnomen, 54.09 per cent; Pine, 45.51 per cent; Marshall, 45.09 per cent; Red Lake, 41.36 per cent; Pennington, 34.86 per cent, and the rest varying in degree, had reached a situation requiring extreme remedies. Even such counties as Hennepin with 19.86 per cent and Ramsey with 19.99 per cent delinquencies indicate the very serious situation then existing. The total of all uncollected real estate taxes in Minnesota on January 1, 1933, amounted to the astounding total of $59,865,125. The total amount of real estate taxes payable in 1932, including special assessments, was $115,715,797. This is the background to the enactment of this particular statute.

The legislature has in many prior enactments sought solution for tax delinquency. It will not be necessary again to refer to the many acts cited in the majority opinion. By L. 1925, c. 208, it was made permissible for the county officers to dispose of taxes, delinquent over a period of years as in this act provided, at one-fifth of the total taxes originally assessed. L. 1927, c. 119, further enlarged upon the privileges of the taxpayer to meet situations such as have been described. Of a similar import is L. 1929, c. 415. L. 1931, c. 129, grants relief of a similar nature. The chapter here under consideration, L. 1933, c. 414, simply enlarges upon what was permitted in prior enactments.

It seems difficult for ingenuity to devise more potent means of enforcing taxes than those operative here and of many years' standing.

The tax judgment is made a perpetual lien upon the land covered thereby "until such judgment and taxes are paid in full." 1 Mason Minn. St. 1927, § 2207. Taxes may be paid by "any person who has a lien, by mortgage or otherwise, upon any land upon which the taxes have not been paid." He is given an additional lien for the amount of such tax so paid by him, and the same is collectible with and as a part of the amount secured by his original lien. § 2209. An occupant or tenant may pay taxes upon the property occupied by him and by filing a notice in the office of the register of deeds may enforce the same as a lien against the land with interest at 12 per cent per annum, or "he may retain the same from any rent due or accruing from him to such owner." § 2210. Before any deed can be recorded it is necessary that taxes be first paid. § 2211. On April 1 of each year the state auditor is required to make a list of all government and railroad lands, including lands sold by the state, furnishing on or before April 15 a copy of the list applicable to each county in which such lands lie, all for the purpose of taxation. § 2220. Property producing rental income may be attached so that the income may be taken and used in payment and discharge of delinquent taxes. § 2150. Under given circumstances, the county auditor, with approval of the court, may enter into leases with tenants who occupy and use real estate upon which taxes are delinquent. L. 1929, c. 266. And there is always the danger facing the property owner that a tax certificate may be purchased by an investor, in which event he of course cannot get the benefit of any discount. It is only where the state has bid in the property because of lack of other bidders that the discount provisions can come into play. Real estate is listed for taxation as of May 1 of each year. Immediately after January 1 following the tax is due, but the taxpayer may pay the same in instalments without penalty, the first half before June 1 and the second half before November 1 following. But a penalty attaches in the event of failure to pay either of such. § 2104. A further penalty attaches immediately after the first of January next following. § 2105. If the tax is not paid, proceedings are instituted and judgment is rendered in March for the amount of the unpaid tax plus penalties and costs.

§§. 2107-2126. In May of that same year the property is offered for sale to any person who may wish to invest. §§ 2127-2134. If there is no bidder the property is bid in for the state. §. 2128. Such property so bid in by the state may be sold to any purchaser thereafter in which event the county auditor issues a state assignment certificate. § 2137. By such certificate the purchaser becomes an assignee of the state's interest and as such is entitled to receive the principal and accruing interest, until paid, or, if no redemption is made, he may proceed to have title vested in himself by having proper notice of expiration of redemption issued and served. § 2137.

In the case here under review it appears that the petitioner did not pay the second half of the 1929 tax. The tax went to judgment in March, 1931, and the property was sold for taxes by the auditor in May of that year. The 1930 tax likewise went to judgment and sale. The taxes for 1931 and 1932 have gone to judgment, but no sale has been had thereunder. This is so for the reason that the state had already directly acquired the lien created by such sale, and the subsequent delinquent taxes are simply cumulative thereto. It is said in the majority opinion that the enactment favors the delinquent taxpayer and for that reason puts him in a favored class over the taxpayer who is prompt in meeting his obligations. In one sense that is true, but is it not equally true that all property upon which taxes become delinquent is in the same situation? Can it be said as a matter of law that the tax delinquencies existing in Minnesota at the time of the enactment of this law were not such as to permit the legislature to enact legislation to have these delinquent taxes reduced' and thereby bring about a probability of future equality of burden on the part of the redeeming taxpayer? Bearing in mind that the property had been offered for sale, at bids open to the world, there being no bidder, can we as a matter of law say that the legislature was without power to grant to property owners the privilege of redeeming their properties at less than the full amount? Is it likely that any person who is so situated that his taxes become delinquent can foresee when the delinquency occurs that the legislature is going to favor him several years later? Is this court willing to go on record now and predict

with any reasonable degree of assurance that at the next legislative session tax reductions will be enacted into law? The law may not be a wise enactment, but courts are not authorized on that account to set it aside. The question is for legislative determination exclusively. The power to enact legislation carries with it also the power of repeal. If the present enactment proves futile and does not bring satisfactory results it may be repealed. We have no right to assume otherwise.

What is to be done with regard to landowners or those who have purchased tax sale certificates in reliance upon this enactment? What about him who has purchased property in reliance upon certification that all taxes are paid? Millions of dollars have been placed in mortgage loans upon our homes and farms by the Home Owners Loan Corporation and Federal Land Bank, and undoubtedly much of the proceeds therefrom has gone into liquidation of taxes under and by virtue of the "discounts" permitted under this law. The situation is serious and deserves our most careful thought and sympathetic consideration.

The problem, as I see the situation, is not one of classification for taxing purposes but rather one of finding a remedy or the means of clearing up bad debts due the state. According to the majority opinion it is conceded that the state may, by appropriate legislative enactment, dispose of its delinquent taxes at less than the full amount "just as the state can sell its buildings or other property," and that as such these delinquent taxes "may be disposed of by the state in such manner as the legislative branch of the state government may deem fit." Apparently the reasoning employed should lead to a result directly the opposite of that here obtained. Perhaps failure to sell at public sale is the basis for the conclusion. If this be true, where is the constitutional limitation or direction that such sales must be so conducted?

By G. S. 1878, c. 11, § 101, it was provided:

"All pieces or parcels of real property bid in for the state under the provisions of this act, and not redeemed within two years from the date of sale, shall become the absolute property of the state, and may be disposed of by the county auditor, at public or private

sale as the auditor of state may direct, subject to such rules and restrictions as he may prescribe." To the same effect is G. S. 1894, § 1616.

These sections have been before this court in several cases, but nowhere is there any question raised as to lack of constitutionality because a private sale instead of a public one was held. State ex rel. Coates v. Butler, 89 Minn. 220, 94 N. W. 688.

Our decisions hold uniformly that the state may dispose of its delinquent tax claims at less than the full amount due it. In State ex rel. Kipp v. Johnson, 83 Minn. 496, 497, 86 N. W. 610, 611, it is said:

"The legislature has the power to provide that the state may sacrifice one-half of the taxes in order to get the lands back upon the tax books for the purpose of producing revenue."

And in State ex rel. Coates v. Butler, 89 Minn. 220, 222, 94 N. W. 688, the Johnson case is expressly approved, and this further statement appears:

"In the sale provided for in section 1616, *supra*, there is an obvious effort to obtain revenue by yielding a portion of the amount for which lands have been previously sold to the state for taxes, * * * by clearing up past forfeitures, in giving up a part of its claims, to secure the desired end, whereby the state is to make a new transfer of its acquired absolute rights upon favorable inducements to purchasers to bid, as well as to the landowners to redeem, in order that the lands may be again placed upon the tax rolls for assessment."

It was urged on the oral argument that this law afforded a convenient landing place for the tax dodger. But this court in State v. Camp, 79 Minn. 343, 347, 82 N. W. 645, 646, said:

"It is suggested that the 'tax dodger' may again find comfort here, for it is said, if the tax judgment or sale be defective, he will permit subsequent taxes to accumulate, and never pay them. In case of a defective judgment or sale this might prove true. To avoid it, the state must obtain valid judgments. The courts can-

not be looked to to enlarge statutes, by construction and interpretation, to intercept and obstruct those who make a study to avoid the payment of taxes. The duty of enacting revenue laws is with the legislature, not with the courts."

If a distinction is to be drawn between the tax delinquency here involved and such as obtain under various cleanup sales, the following quotation from Rupley v. Fraser, 132 Minn. 311, 316, 156 N. W. 350, 352, is pertinent:

"Though we use the term 'forfeited to the state' upon expiration of three years from the date of sale to the state, it is well understood that there is no forfeiture of title in fact. The owner still has title and a right to redeem, until there has been a sale by the state to a private person and notice of expiration of redemption given and the time fixed by statute thereafter has expired. Until such time neither the state nor the purchaser therefrom has more than a lien. Cole v. Lamm, 81 Minn. 463, 84 N. W. 329; Minnesota Debenture Co. v. Scott, 106 Minn. 32, 119 N. W. 391."

Laws of similar purpose to the act here under review have been upon our statute books for a period of more than half a century. The problem involved is purely legislative. As was recently said by Associate Justice Cardozo in Life & Casualty Ins. Co. v. McCray, 291 U. S. 566, 572, 54 S. Ct. 482, 485, 78 L. ed. 987:

"The presumption of validity which applies to legislation generally is fortified by acquiescence continued through the years. Corn Exchange Bank v. Coler, 280 U. S. 218, 50 S. Ct. 94, 74 L. ed. 378; Ownbey v. Morgan, 256 U. S. 94, 41 S. Ct. 433, 65 L. ed. 837, 17 A. L. R. 873."

For the reasons indicated, I respectfully dissent. In my opinion the writ prayed for should issue.