Myers, J.
 

 This cause presents' for determination the following questions: Can a taxpayer of a county, after refusal of the prosecuting attorney upon request made, maintain an action to collect delinquent taxes under authority of Section 2921
 
 et seq.,
 
 General Code? Was the assessment of the taxes in the case at bar valid? Is that part of the Intangible Tax Law of 1931 (114 Ohio Laws, 776) conferring power on the Tax
 
 *571
 
 Commission of Ohio to grant a certificate of immunity from the collection of omitted taxes for the years 1926 to 1930, inclusive, constitutional?
 

 If the relator taxpayer has a right to maintain the present action the authority for same is to be found in Sections 2921 and 2922, General Code. Parts of Section 2921 are as follows: “Upon being satisfied that funds of the county, or public moneys * * * belonging to the county, are * * * withheld from the county treasurer * * * or that money is due the county, the prosecuting attorneys of the several counties- of the state may apply, by civil action in the name of the state, to a court of competent jurisdiction * * * to recover, for the use of the county all public moneys * * * withheld from the county treasurer, * *
 
 *
 
 or to recover such money due the county.” Section 2922 provides the manner in which such action may be instituted by a taxpayer when, upon proper request made, the prosecuting attorney fails' to do so. Sections 2921 and 2922 were first enacted in 1873. In 1880 they were revised into substantially the same form as we have them today, and were then known as Revised Statutes, Sections 1277 and 1278.
 

 It will be observed that Ofiio has long recognized the right of a taxpayer to recover money due the state or a political subdivision thereof. However, respondent executors insist that taxes' are not a debt due the county for the reason that a part thereof goes to the state, a part to the municipality, and a part to other political subdivisions participating in tax funds. Reliance is placed on the case of
 
 Peter
 
 v.
 
 Parkinson, Treas.,
 
 83 Ohio St., 36, 93 N. E., 197, Ann. Cas. 1912A, 751, for authority that taxes are not a debt and therefore not money due the county. We do not believe the rule in that case applicable to the facts' in the case at bar. The syllabus therein holds that the board of county commissioners is without authority to compromise or set-
 
 *572
 
 tie an action brought by the county treasurer for the collection of personal taxes. Moreover, we do not find the word “debt” used in Section 2921. It is not necessary in the instant case to hold that a tax is a debt in every sense in which that word is ordinarily used. The language in part, in Section 2921, is': “Upon being satisfied * * * that money is due the county.” How can any one say that taxes are not money due the county? In order to adopt the construction contended for by respondents, that a tax is not money due the county for the reason that the county does not use all of it, it would be necessary to enumerate
 
 ad infinitum
 
 all of the various political subdivisions to which parts of the money go. Following that reasoning further, if the name of even one subdivision were omitted the purpose of the statute would be defeated. However that may be, we believe that this statute has reference to the collection of money by and due the county, which obviously includes taxes. The state collects millions of dollars of taxes, a large portion of which is redistributed to the counties and political subdivisions. Could it be said that such money, payable to the state in the form of excise taxes, is not money due the state? Would it be necessary to enumerate all of the counties and municipalities' receiving a part of such funds in order to make such a statute effective?
 

 The word “debt” is defined in Bouvier’s Law Dictionary as being “A sum of money due by certain and express agreement.” 3 Lewis’ Blackstone’s Commentaries, 154. See
 
 Fisher
 
 v.
 
 Consequa,
 
 2 Wash. C. C., 382, 9 Fed. Cas., 120. Debt is also therein defined as' “All that is due a man under any form of obligation or promise,” citing
 
 Gray v. Bennett,
 
 44 Mass. (3 Met.), 522. See
 
 Appeal of City of Erie,
 
 91 Pa., 398, 402.
 

 While a tax may not be a debt due the county by certain and express agreement between the parties, it is money due under a much stronger obligation. A tax is a liability created by statute.
 
 Board of County
 
 
 *573
 

 Commrs. of Custer County
 
 v.
 
 Story,
 
 26 Mont., 517, 69 P., 56. In that sense, a tax is' money due under a much more compelling compact than any mere agreement between the parties, for the reason that taxes are generally preferred over all other claims. However, we need go no further than the Probate Code to learn that in circumstances like those in the case at bar a tax is made a debt in Ohio. Section 10509-81, General Code, reads in part as follows: “Taxes or penalties lawfully placed on a duplicate or added by the county auditor or the tax commission of Ohio because of a failure to make a return, or of making a false or incomplete return for taxation, shall be a debt of the decedent.” In the instant case the assessment had been made and the omitted taxes placed on the duplicate. We, therefore, hold that such taxes placed on the duplicate constitute money due the county under Section 2921, General Code.
 

 But it is said by the respondents' that the county treasurer was the proper official, if any, to institute the present action. With reference to this contention let us examine the record. After the county auditor, in 1931, had made the assessment on the record in his office and had given the required certificate to the Treasurer of Stark county, and after the latter official had made the proper entries in the records of his’ office, the respondents made application to the Tax Commission of Ohio for a certificate of immunity from the collection of such taxes as provided for in the Intangible Tax Act of Ohio, 114 Ohio Laws, 776, 778, which reads as follows: “Any person * * * may at any time prior to the 1st day of April, 1932, apply to the Tax Commission of Ohio in the manner provided by Section 5398-1 of the General Code, hereby enacted, for a certificate of immunity from the collection of any omitted taxes' so found.” Thereafter the Tax Commission of Ohio issued to the respondent executors such a certificate of immunity from collection of the omitted
 
 *574
 
 taxes, and by reason thereof the Treasurer of Stark county, being amenable to the orders of the Tax Commission of Ohio, refrained from further procedure with respect to the omitted taxes in the sum of $385,518.21, and for the same reason he refrained from continuing in the records for the years following, such items as delinquent taxes. The hands of the county treasurer were stayed by the Tax Commission of Ohio.
 

 The action of the respondents in securing such certificate of immunity having stayed the hands of the county treasurer, and such official not having deemed it advisable to question the constitutionality of the statute, we hold that the relator, as a taxpayer, after proper request made upon the prosecuting attorney had been refused, had authority to institute and maintain the instant action.
 

 This brings us to the claim of the respondents that the assessment is not valid for the reason that the county officials did not explicitly follow in order all steps necessary to place omitted personal taxes on the tax duplicate. It is claimed specifically that a separate written notice, as provided in Section 5398, General Code, was not delivered to respondents for a hearing before the county auditor previous to the first listing of the property for taxation, even though they were present at a later hearing with benefit of counsel. In the case of
 
 Sturges
 
 v.
 
 Carter, Treas.,
 
 114 U. S., 511, 29 L. Ed., 240, 5 S. Ct., 1014, a statute of Ohio authorized county auditors to issue a compulsory process to bring before them persons who they had reason to believe were making false returns of their property, for examination under oath and to notify every person before making entry on the tax list. A taxpayer, summoned before the auditor to give information regarding property not returned for taxation, appeared, and while in attendance was informed by the auditor of his' purpose to increase the amount of property returned by him for taxation. It was held that this was
 
 *575
 
 a substantial compliance with the provision requiring the auditor to notify the taxpayer before making entry of the increase.
 

 The respondents further claim that the assessment was not made in June, 1931, and in fact not until December, 1931, after the effective date of the Intangible Tax Law. In view of the record in the instant case, are the respondents' in a position to defend on the ground of such omission of technical requirements of the law? If delay there was in the assessment of these taxes, is not the reason to be found, first, with the failure of Carrie Jacobs Brown to make returns in 1926, 1927, 1928, 1929 and 1930, and second, by the failure of the respondents to cooperate with the auditor in 1931 after their appointment as executors, for as such they were officers of the Probate Court and charged with the duty of facilitating the operation of the law? Instead of that there appears in the record a demand on November 12,1931, in form as follows:
 

 “Canton, Ohio, November 12, 1931. “Mr. Per Lee Hunt, Executor Estate of Carrie Jacobs Brown,
 

 “C/o First National Bank, Massillon, Ohio.
 

 “Dear Mr. Hunt:
 

 “On July'22nd, you attended a hearing in this office on the matter of listing omitted taxes on the above-named estate. At the conclusion of this'hearing it was mutually agreed that you would check up on the taxable items in this estate and would submit returns for the back years, beginning with 1926.
 

 “It has now been nearly four months since this hearing and you have failed to make these returns.
 

 ‘ ‘
 
 The Ohio Tax Commission points out that we were in error in certifying omitted taxes before granting you a hearing. However, the hearing has been held, and you have had ample time in which to file these returns.
 

 
 *576
 
 “If we do not hear from you by November 24, we shall take it for granted that you do not intend to make returns for the back taxes, and we will proceed to certify the amount omitted to the County Treasurer.
 

 “Very respectfully,
 

 “Chas. W. Weeks, “Tax Deputy.”
 

 The respondents also assert that the taxes cannot be collected for the reason that same did not appear in the books of the county officials for the years following, forgetting as it were and as we have already observed, that it was their own action in securing a certificate of immunity from the Tax Commission of Ohio that stayed the hand of the county treasurer in respect thereto. In such a situation, the respondents will not be heard to complain about delay, caused first by the failure of the decedent to make tax returns provided by law, and secondly by their own lack of cooperation with the county auditor. The proceedings to place the omitted taxes on the duplicate were started in June, 1931, before the effective date of the Intangible Tax Act, and therefore could not be adversely affected by the statute. We find, therefore, that the assessment was valid.
 

 We come next to the question of the constitutionality of the law under which respondents received a certificate of immunity from collection of the omitted taxes in the case at bar. Objection is first made that the relator as a taxpayer does not have the right or authority to challenge the constitutionality of the statute in this kind of action. It is claimed that his interest is not of such a character as to warrant his raising the question. It is a well-settled rule that in order to question the constitutionality of a statute the one instituting the action must have a' direct personal interest in the litigation. It is held in some cases that the interest should be personal and not official.
 
 Smith
 
 
 *577
 
 v.
 
 Indiana,
 
 191 U. S., 138, 48 L. Ed., 125, 24 S. Ct., 51. In the case of
 
 Braxton County Court
 
 v.
 
 West Virginia, ex rel. State Tax Comm.,
 
 208 U. S., 192, 52 L. Ed., 450, 28 S. Ct., 275, the court in its opinion said at page 197: “The party raising the question of constitutionality and invoking our jurisdiction must be interested in and affected adversely by the decision of the state court sustaining the act, and the interest must be of a personal and not of an official nature.” In the instant case relator is a taxpayer of Stark county and as such has a personal interest in the subject-matter and result of this controversy.
 
 Elyria Gas & Water Co.
 
 v.
 
 City of Elyria,
 
 57 Ohio St., 374, 49 N. E., 335;
 
 Green
 
 v.
 
 State Civil Service Comm.,
 
 90 Ohio St., 252, 107 N. E., 531; 39 Ohio Jurisprudence, 2; and the annotation in 58 A. L. R., 589. See also
 
 Crampton
 
 v.
 
 Zabriskie,
 
 101 U. S., 601, 25 L. Ed., 1070, the second paragraph of the syllabus being as follows:
 

 “Unless otherwise provided by legislative enactment, a resident taxpayer has the right to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which he in’ common with other property-holders may otherwise be compelled to pay.”
 

 Did the Legislature, under the Constitution of Ohio, have authority to enact that part of the Intangible Tax Law of 1931 granting power to the Tax Commission of Ohio to issue certificates of immunity from the collection of omitted taxes for the years 1926 to 1930, inclusive, where such taxes had been placed on the duplicate by the county auditor and certified to the county treasurer as provided by law? In order to answer this question we refer to Section 2 of Article I of the Constitution, reading in part as follows: “All political power is inherent in the people. G-overnment is instituted for their equal protection and benefit. ’ ’
 

 In order to determine whether a law is for the equal
 
 *578
 
 protection and benefit of the people it is necessary to ascertain whether it operates' equally upon all persons charged with the same obligation. If the result of the operation of the law is such that some persons are obliged to pay taxes on a certain kind of property for certain years while other persons owning the same kind of property during the same years are released from such obligations, it cannot in good conscience be said that such a measure conforms to the equal protection clause of the constitution. We may also safely assume that Section 2 of Article I requires not only the substance of a tax law in respect to the same kind of property be uniform but also the manner in which the assessments of taxes and the collection thereof are made. In
 
 Hixon
 
 v.
 
 Burson,
 
 54 Ohio St., 470, the first paragraph of the syllabus, holds that the constitutionality of an act is determined by the nature of its subject-matter, its operation and effect, and not alone by its form.
 

 In the instant case we are concerned not with the rate of taxation but with the collection of the personal property tax after it has been placed upon the duplicate. During the five-year period, 1926 to 1930 inclusive, we must assume that taxpayers generally, pursuant to the law then upon the statute books, returned their personal property for taxation and paid taxes thereon. Those taxpayers, who met their just obligations, were entitled to have all other persons charged with the same obligations pay their taxes as well. We are inclined to believe that such a procedure was intended by Section 2 of Article I of the Constitution.
 

 But it is urged that the so-called classification amendment, effective January 1, 1931, gave to the Legislature, not only the right to enact a law to classify personal property for the purpose of taxation, but also to enact such provisions as would facilitate and make possible its successful operation; in other words, to bridge the gap between the operation of the
 
 *579
 
 old system and that of the new. Giving to such line of argument every possible reason which may be ascribed thereto, we are obliged to say that nowhere in Section 2 of Article XII, do we find any provision in direct conflict with Section 2 of Article I. In fact we find in Section_ 2 of Article XII, the following phrase: “ subject To the provisions of Article I of this Constitution.” Thus, Section 2 of Article XII, having to do with taxes, the phrase, “subject to the provisions of Article I of this Constitution,” in our opinion, can only mean that whatever tax laws are enacted must meet the requirements of the equal protection clause in Section 2 of Article I.
 

 ‘ ‘ The general rule seems well settled that in the absence of express legislative authority neither a political subdivision, * * * nor the state has authority to remit or release a claim for taxes, either wholly or in part, or to compromise such a claim.” 99 A. L. R., 1062. In the instant case there is express legislative authority for the Tax Commission of Ohio to issue the certificate of immunity mentioned in the Intangible Tax Act, 114. Ohio Laws, 776,
 
 supra.
 
 The question we have here is' not whether there was express legislative authority, but rather whether the enactment was in violation of the equal protection clause of the Constitution. The Legislature cannot lawfully commute the taxes on property which it cannot lawfully exempt in consideration of certain services to be performed for the stat¿
 
 (Hogg, Recr.,
 
 v.
 
 Mackay, Sheriff,
 
 23 Ore., 339, 31 P., 779), nor can it authorize the local authorities to abate taxes after they have been assessed in a case in which it could not lawfully grant an exemption.
 
 State, ex rel. Richards,
 
 v.
 
 Armstrong,
 
 17 Utah, 166, 53 P., 981; 26 Ruling Case Law, 252, Section 233.
 

 In
 
 Illinois C. Rd. Co.
 
 v.
 
 Commonwealth,
 
 128 Ky., 268, 108 S. W., 245, affirmed in 218 U. S., 551, 54 L. Ed., 1147, 31 S. Ct., 95, it was held that after an assessment had become final and a railroad company owed the
 
 *580
 
 state the amount of taxes thus fixed, the State Board of Valuation was without authority to make any agreement with the railroad to the effect that if it would pay the taxes for a certain year the board would forego collecting the taxes for the previous years, and -that such contract was utterly void. The principle that undoubtedly governed in that case was that the payment or discharge of a present obligation to the state did not constitute a consideration for the remission of taxes for past years. While the facts in the instant case are not exactly the same, the principle of the statute here under discussion is identical. In other words, the General Assembly in providing for a certificate of immunity from the collection of taxes said in so many words: If it is shown that the taxpayer makes a return of taxable property for 1932 as per Section 5398, General Code, and in good faith lists therein all the personal taxable property in the year 1932, thereupon such taxpayer may make application to the Tax Commission of Ohio for a certificate of immunity from the collection of omitted taxes for the years 1926 to 1930, inclusive. Is such an arrangement permitted by Section 2 of Article I of the Constitution? Obviously it is not an arrangement for the future but a contrivance to remit obligations of the past. It is clearly retroactive and in violation of Section 28 of Article II of the Constitution. In such a case can it be said that the taxpayer who met his obligations for all five years is on the same footing with the delinquent taxpayer who is not only being forgiven the penalty on the taxes but the entire amount thereof? For it must be remembered that we have here a situation dealing not with penalties alone but with the remission of the entire amount of the tax. “It is a generally recognized principle of the law of taxation that a statute authorizing the acceptance, directly or indirectly, of a part of the tax in satisfaction of the whole, is unconstitutional as a denial of the equal protection
 
 *581
 
 of the laws and as a disregard of the equality and uniformity of treatment of all taxpayers, where it may be applied as a favoritism extended to the property owner, or some one acting for him, and not as a permission to the local officers to accept less than the full amount due only because actual test has demonstrated that no more can be obtained.”
 
 Ranger Realty Co.
 
 v.
 
 Miller,
 
 102 Fla., 378, 136 So., 546.
 

 In the instant case the assessment had been placed on the records' by the county officials. The tax, therefore, had become a liability by statute and the county had a right to proceed to collect the same. In
 
 City of Dubuque
 
 v.
 
 Illinois C. Rd. Co.,
 
 39 Iowa, 56, 61, the court said: “The right of plaintiff [municipality] to the taxes in question and the obligation of defendant, to pay them were perfect before the statute under consideration was enacted. The plaintiff has a valid, legal claim against defendant for the amount of the assessment. This claim — a chose in action — was' property, and entitled to the same protection from the law as other property. It rested, as we have seen, upon a contract implied by the law whereby defendant was bound to pay the money in suit to plaintiff. The statute in question deprives plaintiff of this property by declaring the taxes levied by the city shall not be collected, and by releasing defendant from their payment. * * * The legislature is expressly prohibited by the Constitution from the exercise of such despotic and oppressive power. ’ ’
 

 In
 
 State, ex rel. Matteson,
 
 v.
 
 Luecke,
 
 194 Minn., 246, 260 N. W., 206, 99 A. L. R., 1053, the second paragraph of the syllabus is as follows: “This statute, in classifying taxpayers into two classes, those who pay promptly and those who do not, and in allowing a remission or discount to the latter,
 
 held
 
 to violate that clause of Art. 9, § 1, of the Minnesota constitution which requires taxes to be uniform upon the same class of subjects. Such a classification as is here attempted
 
 *582
 
 is unreasonable and arbitrary, there being no essential difference, of nature or circumstances between the two classes. In determining the reasonableness of a classification of taxable subjects, the court may consider the practical effect the classification is bound to have on business and organized society and hence will consider the fact that this statute encourages voluntary tax delinquencies.” See also
 
 Richey
 
 v.
 
 Wells,
 
 123 Fla., 284, 166 So., 817.
 

 While the classification amendment, effective January 1, 1931, gave the General Assembly the authority to classify personal property for the purpose of taxation, it did not give the Legislature the power to classify taxpayers so as to distribute the burdens of taxation unequally. The statute under consideration does attempt to divide taxpayers' into two classes. In one class are placed all those who met their just obligations with reference to personal property taxes from 1926 to 1930, inclusive, and in the other class are placed those who did not. To the latter class it gave a remission and cancellation of all obligations for those years' merely by the act of complying with the personal property tax law in 1932. To sanction such legislation enacted in violation of Section 2 of Article I of the Constitution would be an injudicious construction of constitutional law. To say that such classification comes within the taxation or equal protection clauses of the Constitution is to misunderstand their true purpose.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman and Williams, JJ., cohcur.
 

 Matthias, J., concurs in the judgment.