[1] Reported in 287 N.W. 317.
Certiorari to review an order of the Minnesota tax commission.
A writ of certiorari directed to the members and secretary of the Minnesota tax commission issued out of this court on September 8, 1938, in response to the petition of Cephas Swanson and Gust Widholm, freeholders, citizens, and taxpayers in the city of Minneapolis. It ordered them to certify and return to this court all the records, files, and proceedings of the commission pertaining to a matter entitled, "Application of Calhoun Beach Holding Company." A similar writ issued on the following day in response to the petition of the city of Minneapolis.
The commission's amended return, dated September 29, 1938, was made in return to both writs. A summary of its contents follows. An "application for relief" addressed to the county board and county auditor of Hennepin county and the Minnesota tax commission was presented to the latter. It was signed in the name of the Calhoun Beach Holding Company by Harry W. Goldie, president of the applicant, and was duly verified. This application, set out as an exhibit, states, in effect, that the Calhoun Beach Holding Company, owner of certain land located near Lake Calhoun and described in the application, was a factor in launching an enterprise the purpose of which was to erect a building on this land to be known as the Calhoun Beach Club building. During 1929, while the building *Page 584 
was in the process of construction, financial conditions necessitated the abandonment of the project. Title to the property was to pass to the state on July 13, 1938, because of a tax sale conducted in 1932 for delinquent taxes for 1930. The applicant declared that it was engaged in clearing the title to the property in preparation for completion of the building. The application contains the following statement:
"For every year since then [1929], including the year 1930, taxes have been imposed upon the land and improvement, resulting in the accumulation on the books of the county treasurer and county auditor of a total tax claim, based thereon, altogether out of reason and beyond the ability of the applicant and all others interested in the said project to pay. Not a dollar of revenue has been produced by said property nor can any revenue be obtained until the building is finished, at a great expenditure of further funds. The taxes, based on land value alone, amount, at the original figure for these eight years, to $465.60, $463.74, $463.37, $478.33, $614.59, $595.97, $584.78, $630.37, making an original total, exclusive of penalties and interest, amounting in all to $4,296.75. The applicant offers to pay this, plus $1,703.25, making a total of $6,000.00, in full settlement of all taxes, certified check herewith tendered."
The application concludes by pointing out that if the request be granted the building would be completed and thereby labor would be employed and the building would produce income so as to make possible the payment of future taxes.
A certificate of recommendation by the county board and county auditor of Hennepin county states that the allegations and statements contained in the application have been carefully examined and were believed to be true. Recommendation was therein made that the application be granted.
A petition addressed to the board of county commissioners and signed by the Calhoun Beach Holding Company by H.S. Goldie, president, and the Calhoun Beach Club Completion Committee, by H.W. Ralph, chairman, was presented and filed. Its substance is similar to that of the application. *Page 585 
A letter from the board of county commissioners, signed by the committee of the whole by five of its members, was also filed. It states that granting the application would enable the owners to complete the building, provide employment for labor, and pay taxes in the future. The opinion that the building will not be worth more than wrecking value if left exposed is expressed.
The order of the commission granting the application completes the exhibits returned. The commission certifies that, in addition to these exhibits, its decision was based on verbal arguments made by interested parties to the following effect:
"That the property was not a completed building but merely materials put together in such form as not yet to make a completed hotel, apartment building, or clubrooms; that no part was completed sufficient for occupancy or had been occupied and that it had produced no income and no part was in such a state of completion that income could possibly be derived from it;
"That a fair assessment of taxes would be an assessment upon the value of the real estate alone and that the sum offered and tendered with the application equaled more than the full amount of taxes assessed against the bare land, plus all penalties and interest thereon;
"That assurance was given by said Calhoun Beach Holding Company and the interested parties appearing before the Commission that they and their associates would see that the building was in fact completed within a reasonable time so that it could earn revenue and that taxes thereon at its completed value could be assessed and collected;
"That the completion of the building would result from an adjustment of the taxes in accordance with the application and would soon give employment to a number of carpenters, plumbers, and other artisans in said work;
"That the completion of the building would result in permanent employment for janitors, caretakers, managers, and a number of other persons; *Page 586 
"That if the building was completed it could be rented and furnish a large income; the building would then have a large and substantial value and would be restored to the tax rolls and assessed at a very large sum; that earnings thereon would be such that taxes could and would be paid thereon from year to year in the future and result in benefits to the state and other taxing units through the future collection of very large sums of tax revenue."
Finally, the return states that the decision of the commission was made in light of the opinion expressed by George F. Gage, one of its members who has had considerable direct experience with the project in question, to the effect that the property involved was without any substantial value, that the sum offered by the applicants for tax abatement in said petition was a fair, just, and equitable offer and represented a sum equal to the taxes that should have been levied upon the property if assessed in accordance with the value which it had during the period when said taxes were assessed. Mr. Gage recommended to the commission that it grant said petition for abatement.
In addition to this affirmative matter, the amended return contains admissions and denials of the averments made by petitioners in seeking the writs of certiorari. It is admitted that the delinquent taxes on the property amounted to about $100,000 plus penalties, interest, and costs.
Relators contend that (1) the commission abused its discretion in making the order granting the reduction in taxes involved herein; (2) the commission disregarded statutory prohibitions when it made the order granting an abatement of taxes without first procuring the approval of the standing committee on taxes of the city of Minneapolis; (3) the commission had no jurisdiction to entertain the application in the absence of notice to the city of Minneapolis; (4) the application was granted more than five years after the property had been sold at an annual delinquent tax sale contrary to the provisions of 3 Mason Minn. St. 1938 Supp. § 2139-2; and (5) the commission violated the uniformity clause of the state constitution. *Page 587 
1. It is argued by relator city of Minneapolis that the order of the commission cannot be regarded as just and equitable within the meaning of 1 Mason Minn. St. 1927, § 1983, which provides:
"The Minnesota tax commission * * * shall hear and determine all matters of grievance relating to taxation. It shall have power to grant such reduction or abatement of assessed valuations or taxes and of any costs, penalties or interest thereon as it may deem just and equitable, and to order the refundment in whole or in part of any taxes, costs, penalties or interest thereon which have been erroneously or unjustly paid. Provided, however, that application therefor shall be submitted to it with a statement of facts in the case and the favorable recommendation of the county board or of the board of abatement of any city where any such board exists, and the county auditor of the county wherein such tax was levied or paid. * * * But no reduction, abatement or refundment of any special assessments made or levied by any municipality for local improvements shall be made unless it is also approved by the board of review or similar taxing authority of such municipality."
The extent of the power of the commission under this statute was considered by this court in In re Application of People's Independent Tel. Co. for Refund of Taxes, 156 Minn. 87,194 N.W. 317, where Mr. Justice Quinn, speaking for the court, said at p. 89:
"The statute confers upon the commission, when a proper showing is made, power to order a refundment, in whole or in part, of any taxes paid. To determine whether such a showing has been made requires a high degree of discretion on the part of the commission. In the instant case, the question whether a portion of the property was appropriated, without unnecessary delay to the conduct of the relator's telephone business, whether the whole or part of the ad valorem tax was proper, and whether, under all the circumstances, a refundment should be made, was a matter within the discretion of the commission and not one of law for the courts. Such we think was the clear legislative intent. Whether the commission found all of the allegations of the application true is not *Page 588 
disclosed by the record. It is an administrative body, vested with quasi judicial functions. It is not necessarily obliged to confine its considerations to the facts as set forth in the application. State v. Minnesota Tax Commission, 137 Minn. 20,162 N.W. 675. In construing the statute now under consideration, in the Kasper case, 137 Minn. 37, 162 N.W. 686, it was said that [at page 40]: 'It is a manifest purpose of the provisions to give to the tax commission the right * * * to give relief where taxing officers and the courts could not afford it * * * The statute does confer discretionary power to act in cases where there is a fair showing that justice and equity call for the exercise of discretion.' "
The same opinion explained the scope of review of orders of the commission in this language [156 Minn. 89]:
"It follows that, the commission being empowered to grant such relief as it may deem just and equitable in such matters, and having considered and acted upon the facts as presented, the courts will interfere with an exercise of the discretion vested in the board only to correct a manifest abuse thereof, or plain error in law or fact, or mixed law and fact, a situation not here presented."
State ex rel. City of Ely v. Minnesota Tax Comm. 137 Minn. 20,162 N.W. 675, is to the same effect. See 23 Minn. L.Rev. 69.
From the return it appears that the property produced no income during the period when the taxes abated were accumulating. The building stood idle and uncompleted for nearly ten years. It was not only useless of itself but was also an obstruction which prevented the utilization of land on which it was located for other purposes. If, as suggested in State ex rel. Matteson v. Luecke, 194 Minn. 246, 260 N.W. 206,99 A.L.R. 1053, the principle of ability to pay is to be considered in determining whether or not taxes should be abated, it would appear that a drastic lowering of the amount charged against the Calhoun Beach Club property was proper. Since the circumstances surrounding the enterprise were unique, it was impossible for the commission to refer to similar situations as a guide for their order. In light of these facts, we cannot say that accepting $6,000 in satisfaction of back taxes *Page 589 
(exclusive of special assessments) was, in this case, a manifest abuse of discretion.
Relators Swanson and Widholm emphasize the argument that the provision of 1 Mason Minn. St. 1927, § 1983, requiring a statement of facts, was not observed. An outline of what they consider to be essential facts within the meaning of this provision is contained in their brief and includes: (a) The true interest of the applicant; (b) special assessments; (c) the full or assessed value on which the taxes were computed; (d) the alleged proper, full, or assessed value of the property at the time of the assessment, if that is the reason for the application; and (e) the present value of the property, if that is the reason for the application. No doubt the commission would be aided by a statement setting out facts in detail in accordance with this outline. But failure to require such is not, in our opinion, a manifest abuse of discretion or an error of either law or fact. If the commission acted without information or with no statement of facts whatsoever, a different problem would be presented. But it here appears that sufficient facts were brought to the attention of the commission to enable it to identify the premises involved, to conclude that the applicant had an interest in the property, to determine the present and prospective value of the property, to ascertain that the project involved has thus far proved to be financially sterile, and to decide if the offer made was just and equitable. Thus it appears that the commission recognized the necessity of acting on facts and that its judgment was directed by information which its members acquired. This amounts to compliance with § 1983 as it is now written.
In support of their contention that the commission manifestly abused its discretion, relators cite St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L. ed. 1033,1041; United States v. A. T. S. F. Ry. Co. 234 U.S. 476,34 S.Ct. 986, 58 L. ed. 1408; Morgan v. United States,304 U.S. 1, 58 S.Ct. 773, 999, 82 L. ed. 1129; Butler v. City of Des Moines, 219 Iowa, 956, 258 N.W. 755; Bunten v. Rock Springs Grazing Assn. 29 Wyo. 461, 215 P. 244; and the Minnesota cases previously cited. We find nothing therein which is contrary to the views herein expressed. *Page 590 
2. Relators believe that the settlement included special assessments and argue that since the approval of the board of review or other similar taxing authority was not obtained (as required by § 1983, supra), the commission was without authority to grant the application. Neither the application for abatement nor the order granting it mentions special assessments. The former offers $6,000 in "full settlement of all taxes"; the latter merely states that upon due consideration the application is granted and authorizes and directs the auditor and treasurer of Hennepin county to make necessary changes and entries in the books and records of their respective offices. While the word "tax" in its broad meaning includes both general taxes and special assessments (1 Cooley, Taxation [4 ed.] c. 1, § 31, p. 106), the reluctance of the courts so to hold where the result would be to deplete public revenues is well illustrated by the case of Washburn Memorial Orphan Asylum v. State, 73 Minn. 343, 347, 76 N.W. 204, where it was held that a constitutional provision providing that institutions of public charity should be "exempt from taxation" did not exempt such institutions from paying special assessments. To concede that the commission intended to abate special assessments necessitates the inference that it ignored the command of the statute which endows it with power. Such an inference cannot be made without substantial evidence to support it since good faith on the part of the commission is presumed. State ex rel. Inter-State Iron Co. v. Armson,166 Minn. 230, 232, 207 N.W. 727; cf. State v. London N.W. A. M. Co. 80 Minn. 277, 83 N.W. 339. In its amended return the commission denies "that the respondent (commission) reduced or abated, or attempted to reduce or abate, any special assessment levied against the property involved." In the absence of mention of special assessments in the application for abatement and order granting it and in light of (a) the traditional reluctance of the courts to include special assessments in taxes where the result would be to diminish collections; (b) the presumption that the commission acts in good faith; and (c) the denial by the commission that special assessments were included in its order, we conclude that the case was *Page 591 
not such as to require approval of the board of review or other similar taxing authority in the city of Minneapolis.
3. It is next urged that the failure of the commission to give notice to the city of Minneapolis voids the proceedings. Relators maintain that notice is required by 3 Mason Minn. St. 1938 Supp. § 2372-1, which reads:
"It shall be the duty of the Tax Commission whenever any tax-payer or property owner has applied for a reduction of the assessed valuation of any real or personal property in an amount exceeding Fifteen ($15,000) Thousand Dollars, to give written notice to the officials of the municipality wherein such property is located, and to permit such municipality to have a reasonable opportunity to be heard at any proceedings concerning such application."
Succeeding sections set out the manner in which such proceedings are to be conducted.
The question presented is: Does this statute require that notice be given to municipalities before applications such as the one here in question are granted? The commission, in its amended return, describes the application as one for abatement of taxes. By its order granting the application, the commission reduced a fixed obligation to pay taxes charged against property. If there is no distinction between such a proceeding and one for the reduction of assessed valuation, the section above quoted is applicable. We are of the opinion that an essential difference exists. To assess property is to fix its value for the purpose of taxation. Trask v. Skoog, 138 Minn. 229,164 N.W. 914; City of Chicago v. Fishburn, 189 Ill. 367,59 N.E. 791; 1 Bouvier, Law Dictionary (Rawle's 3 Rev.) p. 256. The assessed valuation of property is that value upon each unit of which a prescribed amount must be paid as taxes in the future; it is a factor which, together with the tax rate fixed by the taxing agencies of government, is used to determine the amount of taxes to be charged against specific property. Taxes are pecuniary charges imposed by the legislative power of the state upon persons or property to raise money for public purposes. Davidson v. County Commrs. Ramsey Co. 18 Minn. 432
(482).Thus it appears that tax *Page 592 
abatement deals with the product which assessed valuation is a factor in determining. Logically, reduction of assessed valuation precedes, while abatement of taxes follows, the charging of taxes. This distinction was apparently recognized by the legislature in 1 Mason Minn. St. 1927, § 1983, because the commission is thereby granted power to reduce or abate assessed valuations or taxes. In contrast, 3 Mason Minn. St. 1938 Supp. § 2372-1, does not mention applications for abatement of taxes. We conclude that the omission was intentional; that the duty of giving notice to municipalities does not extend to cases where application for abatement of taxes is made; and that § 2372-1 does not apply to the instant case.
4. Our attention is also directed to 3 Mason Minn. St. 1938 Supp. § 2139-2, which provides:
"Except as hereinbefore provided, all parcels of land hereafter duly sold at the annual delinquent tax sale, * * * shall at the expiration of five years from the date of such sale become and be the absolute property of the purchaser or of the state, or of his or its assigns, * * *. Provided that at any time before the expiration of such period of five years from the sale of any parcel at any such annual or delinquent tax sale any person interested in such parcel * * * may apply to the court * * * to have the taxes, penalties, interest and costs remaining unpaid on such parcel, set aside or reduced * * *. Provided, further, that no action, defense or application attacking the validity of the sale of any parcel at an annual delinquent tax sale * * * shall be entertained unless brought, interposed or made within five years from such sale."
Inasmuch as the first proviso treats of applications to the court, the word "application" as used in the second proviso must refer to proceedings of the type considered in the previous sentence. This conclusion is fortified by the fact that "application" is used as parallel to "action" and "defense," which obviously refer to court actions. It is our opinion, therefore, that this statute does not apply to proceedings before the commission. *Page 593 
5. Finally, it is contended that the commission in granting the application violated the uniformity clause of the state constitution. Most persuasive of the authorities cited in favor of this theory is State ex rel. Matteson v. Luecke, 194 Minn. 246,260 N.W. 206, 99 A.L.R. 1053, where it was held that a statute, in classifying taxpayers into two classes, those who pay promptly and those who do not, and in allowing a remission or discount to the latter, was violative of Minn. Const. art. 9, § 1, which requires taxes to be uniform on the same class of subjects. Note that the objectionable classification was inherent in the statute itself. Relators do not contend that 1 Mason Minn. St. 1927, § 1983, which grants the commission power to make such adjustments as it deems just and equitable, violates the clause in question. Nor could they validly so claim. The classification contemplated by the statute is within the language to be found on page 253 of the Matteson case, where the court said:
"Though apparently there is but little judicial authority on the precise question, we perceive that a law permitting a delinquent taxpayer to pay a portion of delinquent taxes in full satisfaction thereof might be valid under certain circumstances. If, for instance, the amount to be paid in full satisfaction of delinquent taxes was made to depend upon the value of the property, an investigation of the owner's ability to pay, and perhaps other considerations, such a law might be sustained * * *. There would then be no unreasonable classification, and the evil of the case at bar would be avoided."
In fixing justice and equity as the principle by which the commission was to guide itself, the legislature must have had the thought in mind that the commission was to base its decisions, in part at least, on the value of the property in question and the ability of the owner to pay. Failure by the commission properly to apply this standard does not constitute unequal taxation unless systematic and intentional. See State v. Fritch, 175 Minn. 478, 221 N.W. 725; Coulter v. Louisville N. R. Co. 196 U.S. 599, 25 S.Ct. 342, 49 L. ed. 615; New York State v. Barker, 179 U.S. 279, *Page 594 21 S.Ct. 121, 45 L. ed. 190; 1 Cooley, Taxation (4 ed.) § 302, p. 636; Rottschaeffer, Constitutional Law, p. 676.
Other authorities cited by relators on this point are distinguishable in that they involve constitutional provisions not to be found in the fundamental law of this state or because concerned with matters which render them inapplicable as precedent.
We conclude, therefore, that the commission had jurisdiction to grant the application; that in doing so it did not go beyond its discretionary power or authority so as to require our intervention; and that its action does not constitute a violation of the uniformity clause of the state constitution.
Writs discharged.