Zimmerman, J.,
 

 concurring. I concur in the foregoing opinion, believing the instant case to be distinguishable from the cases of
 
 State, ex rel. Hostetter,
 
 v.
 
 *59
 

 Hunt et al., Exrs.,
 
 132 Ohio St., 568, 9 N. E. (2d), 676, and
 
 State, ex rel. Greenward Realty Co.,
 
 v.
 
 Zangerle, County Aud.,
 
 135 Ohio St., 533, 21 N. E. (2d), 662, and entertaining the view that the General Assembly possesses the power to limit a county auditor in the examination and investigation of tax returns for preceding years.
 

 The presumption of the constitutional validity of statutes still prevails in Ohio and an act of the General Assembly should not be struck down by judicial pronouncement unless clearly violative of some provision of the state or federal Constitution. Neither have courts the right to usurp the functions of the legislative branch of the government upon questions of public policy. In this connection the following observation, based on public records, would seem pertinent :
 

 For a long time prior to 1931 the tax rates on personal property were high. From 1926 through 1930 the average was in excess of two per cent. Many of the owners of intangible property, regardless of whether their holdings were large or small, considered the rates not only unjust but confiscatory, with the result that they felt no moral obligation to make complete returns and did not do so. Whether justified or not, a “taxpayer’s strike” existed. For example, in 1924 there was approximately $3,514,334,261 on deposit in Ohio banks on tax listing day, but only $183,-234,261, or about five per cent, was returned for taxation. From a realistic standpoint the state taxing authorities faced a desperate situation about which something had to be done. So in 1931 a new and fairer taxing system was evolved and translated into law. In order to make this new system effective and to serve a public purpose, the General Assembly said in effect to the owners of personal property, “If you will make a full and complete disclosure of your property in 1932, you will be protected from the assessment of back
 
 *60
 
 taxes and penalties.” The offer was certainly made in good faith to assure the success of the new law, and the response was wholehearted and gratifying. Despite the sharp decline in market values generally from 1930 to 1932, the report of the state Tax Commission for 1933 discloses that the value of intangible personal property returned for taxation rose from $902,194,870 in 1930 to $7,172,823,115 in 1932.
 

 Under these circumstances, a holding that the immunity provisions of the statutes in question are unconstitutional would produce an unconscionable result.