W. H. RICHEY, ETC., *et al.*, v. C. ROGERS WELLS.

166 So. 817.

Division B.

Opinion Filed March 17, 1936.

*Duncan, Hamlin & Duncan, J. W. Hunter, John S. Lavin* and *Treadwell & Treadwell,* for Appellants;

*Wells & Hall* and *C. Rogers Wells,* for Appellee.

DAVIS, J.—The facts of the controversy are stated in the accompanying opinion prepared by Mr. Justice TERRELL.

It is settled law that under the Fourteenth Amendment to the Constitution of the United States an unjust and illegal discrimination may arise out of the enactment of a legislative measure that makes such unjust and illegal discrimination *possible* although it is not expressly required by the terms of the law itself as written.

Though a law be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Federal Constitution under the Fourteenth Amendment. Thus, while sovereignty is not subject to law, for it is the author and source of law, the fundamental rights of life, liberty and the pursuit of happiness are to be considered as individual possessions, secured as affirmed by the Declaration of Independence which antedates both State and Federal Constitutions, and are therefore protected by both, because the Constitutions themselves so specifically declare.

This means that the State itself, in administering or exercising its acknowledged powers of lawmaking, must restrain its legislative acts within the bounds of those maxims of constitutional law which ordain that no man may be compelled to hold his life, his means of living, or any material right essential to the *enjoyment* of life, at the mere will of another acting under laws that are not just and equal in their intended application to every one similarly situated.

Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. Rep. 1064, 30 L. Ed. 220.

I agree to the proposition that the Legislature may liquidate on any terms that it sees fit any tax certificate lands, the title to which it has acquired as the result of the enforcement of its tax laws, whether by operation of law, foreclosure sale, or otherwise. But that is not all that is attempted to be done by Chapter 17406, Acts of 1935, here brought in question. On the contrary, said Chapter 17406, *supra,* undertakes to allow the compromise and adjustment of "omitted subsequent taxes upon lands" at the discretion of a statutory board set up in the Act, the only rule of conduct for which is comprehended within the vague and indefinite term "within its sound discretion."

What is such "sound discretion" considered from the standpoint of that definiteness and certainty which must characterize all statutes, in order that the powers of government shall be administered as "one of laws and not a government of men?" I have searched the statute in vain for a prescription of any such standard. Therefore, the statute is in terms nothing more than an unconstitutionally delegated power of legislation vested in certain named officers whose sole limitation on the exercise of the powers vested, is that of their own free will and choice, otherwise characterized in the Act as "sound discretion," insofar as "omitted subsequent taxes" are concerned. It is not enough to say that no actual abuse of such unbridled power is threatened or has occurred. It is sufficient to point out that no such power can be vested in the first instance, because whatever power the state has to remit taxes already duly assessed and levied is a purely legislative power, the exercise of which cannot be delegated to a statutory board to be indulged in at its mere "discretion" whether "sound" or

otherwise. See: Illinois Cent. R. Co. v. Commonwealth, 128 Ky. 268, 108 S. W. Rep. 245.

I am of the opinion therefore that insofar as Chapter 17406, Acts of 1935, authorizes the compromise and adjustment of the amount required to be paid for the "redemption" of "omitted subsequent taxes" upon delinquent tax certificated lands at the mere "discretion" of the County Delinquent Tax Adjustment Board created by the Act, that such statute is violative of the Fourteenth Amendment to the Constitution of the United States in that it sets up a system for the administration of the tax redemption laws of this state that is unequal in the scope of its application to taxpayers generally, and that such feature of the statute is further unconstitutional as an unlawful delegation of legislative power to the County Delinquent Tax Adjustment Board, inasmuch as no definite and certain standard for the administration of the Act in its tax remission feature is therein stated, laid down or set forth.

The provision of Section 3 that the authorized compromises must be only "upon principles of fairness to the county and the owners and lienors of such lands" is fatally indefinite under the constitutional requirements of certainty in statutes of this character, and adds nothing to the statute not already comprehended within the words "sound discretion" as previously used in the same section. Chenoweth v. State Board of Medical Examiners, 57 Colo. 74, 141 Pac. Rep. 132, Ann. Cas. 1915D, 51 L. R. A. (N. S.) 938.

"Omitted subsequent taxes" are current taxes and as such they may not be constitutionally compromised, adjusted or remitted on any terms not likewise made available to all taxpayers alike—that is to say, those who have already paid their current taxes due on lands not tax delinquent,

nor certified to the state, nor held by the state subject to redemption at the option of the owner under circumstances permitting the owner and no one else to demand redemption as a matter of right on condition that he pay therefor such "omitted subsequent taxes" as other taxpayers have already been compelled to pay for the same taxpaying period, or which they remain liable to being compelled to pay because no "compromise or adjustment" privileges are open to them under the terms of any prevailing statute.

If the foregoing is not so, then the constitutional requirement of the equal protection of the tax laws is a meaningless jargon of words, because under the state's tax laws as here proposed to be administered, a delinquent taxpayer can compromise a "current" unpaid tax merely because it is called in legal name an "omitted subsequent tax," whereas one who is not so delinquent or who has paid the tax is denied an equivalent privilege. The refunding or remission of an "omitted subsequent tax" in one county alone, or to one class of citizens only, such as to those who have resided in Florida for five years or more, would be no less objectionable from the standpoint of unequal protection of the tax laws, than what has just been pointed out can be done under Chapter 17406 with reference to "omitted subsequent taxes."

My view is not that an Act of the Legislature cannot be validly passed for the purpose of authorizing the compromise or adjustment of current taxes, but is to the effect that when any such compromise or adjustment is attempted to be authorized, it constitutes an exercise of a purely legislative power, and is equivalent in contemplation of the Constitution to a new tax law on the subject dealt with, and therefore must be so framed as to extend equal protection of its provisions and benefits to all taxpayers alike.

Further, my view is that while such a statute may be framed in general terms, and its administration and application to individual cases committed to the judgment of an administrative board, such, for example, as a County Tax Adjustment Board, that, nevertheless, the terms of the authorized compromise and adjustments allowed to be made must be definitely and certainly specified in the statute itself, and therein so specified as to be capable of judicial enforcement should the administrative officers charged with the duty of executing such law properly, fail to execute it or carry it out according to its true intent.

It is my view further, the constitutional requirement of equal protection of the tax laws, prohibits the Legislature from selecting and classifying delinquent taxpayers as the beneficiaries of special tax concessions with reference to unpaid current taxes, unless the same benefits are made equivalently available in some form or other to non delinquent taxpayers. I am therefore of the opinion that any statute framed or administered in violation of the aforementioned sound principle of constitutional justice, transcends the limits of both State and Federal provisions of organic law on the subject of equal protection of the law, and must be so declared in the courts when properly challenged by an affected litigant.

The injunction should be affirmed insofar as it restrains the Lake County Development Tax Adjustment Board from exercising the attempted power to compromise and adjust "omitted subsequent taxes," but that otherwise it should be reversed on the ground that there are valid features of Chapter 17406, Acts of 1935, that are capable of being administered by such Board that should not be halted by judicial decree absent some showing of particular abuse.

WHITFIELD, C. J., and ELLIS and BROWN, J. J., concur.
TERRELL and BUFORD, J. J., dissent.

TERRELL, J. (dissenting).—The Legislature of 1935 enacted Chapter 17406 providing for the creation of a Delinquent Tax Adjustment Board in each county of the State and a Delinquent Tax Adjustment Board of Appeals in the State and defining the powers and duties of each, their purpose being to compromise and adjust tax sale certificates held by the State under certain conditions.

Section 3 of Chapter 17406, defining the powers of Delinquent Tax Adjustment Boards, is as follows:

"The said Board is authorized in its sound discretion, to compromise in its sound discretion, to compromise and adjust the amount required to be paid for the redemption or purchase of tax sale certificates, or any portion of any such certificates, held by the State for the year 1933, and/or any previous year or years upon lands within said county, including the omitted subsequent taxes upon such lands, upon principles of fairness to the county and the owners and lienors of such lands, provided, however, that all taxes due the State of Florida are to be paid in full."

In June, 1935, appellee, as complainant below, filed his bill of complaint against the County Commissioners of Lake County as the Delinquent Tax Adjustment Board of that county charging that Chapter 17406 was in conflict with Sections 1 and 12 of the Declaration of Rights, Section 16 of Article 3 and Sections 1 and 3 of Article 9 of the Constitution of Florida, and was, therefore, void and unenforceable. It prayed that the said Act be adjudged to be invalid and that defendants be restrained from proceeding under it. A temporary restraining order was granted and a motion to dissolve was denied, from which order the instant appeal was taken.

292

Except for the assault on the ground of deficient title the questions raised in this case are identical with those raised in City of Marianna, *et al.,* v. Gussie Davis and Paul Carter, decided this date. The Acts involved in each case are identical in purpose. Chapter 17406 involved in the instant case applies to County Delinquent Tax Adjustment Boards and is somewhat more elaborate than Chapter 17405 relating to Municipal Tax Adjustment Boards.

We find no merit to the assault on the title of Chapter 17406. Otherwise the ratio decidendi of the City of Marianna, *et al.,* v. Gussie Davis and Paul Carter concludes all questions raised in the instant case.

BUFORD, J., concurs.